**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ARCHFORENSIC, LLC,**<br>**Plaintiff,**<br>**v.**<br>**ARCH ENGINEERING, LLC, d/b/a ARCH FORENSICS, LLC, ARCH FORENSICS, LLC, and VIVIAN GOLDBLATT, an individual,**<br>**Defendants.** | Civ. No.: 21-16022 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Currently before the Court is the unopposed motion for default judgment ("Motion") by Plaintiff ARCHforensic, LLC ("ARCHforensic") against Defendants Arch Engineering, LLC (d/b/a Arch Forensics, LLC), Arch Forensics, LLC, and Vivian Goldblatt (collectively, "Defendants"). ECF Nos. 24-25. For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART** and Plaintiff is awarded relief pursuant to the Order accompanying this Opinion.

## I. BACKGROUND

Plaintiff is a forensic architecture and forensic engineering firm that is licensed in thirteen states and holds a national certification for architecture. Compl. ¶ 10, ECF No. 1. Plaintiff provides building and architectural design, consulting, inspection, and expert witness services. Compl. ¶¶ 11-12. Since at least September 2014, Plaintiff has used its "ARCHforensic" trademark for its services in interstate commerce. Compl. ¶ 15. Plaintiff's trademark is registered on the Federal Register, and Plaintiff owns all rights, title, and interest to the trademark for the services described therein. Compl. ¶ 16. Plaintiff also owns and uses the website domain name "www.archforensic.com" to promote, advertise, and sell its services. Compl. ¶ 17.

Plaintiff alleges that Defendants similarly provide "forensic science" services, including, but not limited to, engineering inspections and expert witness testimony for construction cases. Compl. ¶ 26. Defendants' services overlap with Plaintiff's services. Compl. ¶ 27. Plaintiff alleges that after its first use of its "ARCHforensic" trademark, Defendants began using "Arch Forensics" as a mark in commerce in connection with its

offered services without Plaintiff's license, consent, or approval. Compl. ¶¶ 28-29. Specifically, Defendants are alleged to be using "www.archforensics.com" as a website domain name for a business named "Arch Forensics, LLC." Compl. ¶ 31. Plaintiff alleges that the "Arch Forensics" mark and domain name is confusingly similar to, and infringes upon, Plaintiff's "ARCHforensic" mark. Compl. ¶ 32.

In January 2019, Defendant Goldblatt applied to register the mark "ARCH FORENSICS, LLC" on behalf of Arch Engineering, LLC, d/b/a Arch Forensics, LLC in the United States Patent and Trademark Office ("USPTO").[1] Compl. ¶ 34. However, the USPTO denied Defendant's trademark application because the "ARCH FORENSICS, LLC" mark was confusingly similar to Plaintiff's "ARCHforensic" mark. Compl. ¶ 35. Subsequently, Defendants filed an opposition proceeding in the Trademark Trial and Appeal Board ("TTAB") against Plaintiff's registration of its "ARCHforensic" mark. Compl. ¶ 36. The opposition was dismissed in 2020. Compl. ¶ 37. Because of these prior proceedings, Plaintiff asserts that the Defendants' continued use of the "Arch Forensics" mark is intentional and "done with full knowledge of Plaintiff's prior rights and ownership" of the "ARCHforensic" mark. Compl. ¶ 32.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action on August 25, 2021. Plaintiff asserts five causes of action: (1) Infringement of a Federally Registered Trademark under 15 U.S.C. § 1114; (2) False Designation of Origin in violation of 15 U.S.C. § 1125(a)(1)(A); (3) Cybersquatting in violation of 15 U.S.C. § 1125(d); (4) False Advertising in violation of 15 U.S.C. § 1125(a)(1)(B); and (5) common law trademark infringement and unfair competition. Due to Plaintiff's inability to locate Defendants despite Plaintiff's timely efforts and the hiring of an investigator, the Court granted Plaintiff's motion to serve Defendants by email. ECF No. 16. Defendants were served via email on May 11, 2022. ECF Nos. 17-19. Defendant failed to answer or otherwise respond to the Complaint, and at Plaintiff's request, the Clerk entered default against Defendants on July 18, 2022. ECF No. 22. Due to Defendants' continued failure to plead or otherwise defend the action, Plaintiff filed the instant motion for Default Judgment on August 18, 2022. ECF Nos. 24-25. Plaintiff seeks permanent injunctive relief, statutory damages, and attorney's fees. ECF Nos. 24-25. Defendants have not responded.

## III. DISCUSSION

### A. Legal Standard

"Pursuant to Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a properly served defendant who fails to plead or otherwise defend an

[1] The Court takes judicial notice of the parties' USPTO and TTAB proceedings. *See New Jersey Physicians United Reciprocal Exch. v. Privilege Underwriters, Inc.*, No. CV 15-6911, 2016 WL 6126914, at *3 (D.N.J. Oct. 18, 2016).

action." *Dempsey v. Pistol Pete's Beef N Beer, LLC*, No. CIV. 08-5454, 2009 WL 3584597, at *2 (D.N.J. Oct. 26, 2009) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). While "the entry of a default judgment is left primarily to the discretion of the district court[,]" the Third Circuit has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984). As such, "prior to entering a judgment of default, a court must determine: (1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a legitimate cause of action, and (3) whether the circumstances otherwise render the entry of default judgment 'proper.'" *Chanel, Inc. v. Matos,* 133 F. Supp. 3d 678, 683 (D.N.J. 2015) (footnote omitted).

The Court determines each of these considerations in turn. "In considering a motion for a default judgment under Rule 55(b)(2), a district court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages." *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017). "[T]he plaintiff must prove that he is entitled to the damages sought." *Id.*

**B. Jurisdiction, Service, and Venue**

The Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, 1367. The Court has personal jurisdiction over Defendants because they can each be said to be "at home" in New Jersey. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); Compl. ¶¶ 3-6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2). Plaintiff properly served Defendants via email pursuant to this Court's order. ECF Nos. 16-19.

**C. Legitimate Cause of Action**

The Court will now assess whether the facts, as pleaded by Plaintiff, present a legitimate cause of action for each of Plaintiff's five claims.

1. *Counts 1, 2, and 5: Infringement of a Federally Registered Trademark, False Designation of Origin, and common law trademark infringement and unfair competition*

The Third Circuit measures claims for federal trademark infringement under 15 U.S.C. § 1114, federal false designation of origin and unfair competition under 15 U.S.C. § 1125(a)(1)(A), and common law trademark infringement and unfair competition by identical standards. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000); *Pharmacia Corp. v. Alcon Lab'ys, Inc.*, 201 F. Supp. 2d 335, 386 (D.N.J. 2002) ("[I]n the Third Circuit the test for common law infringement and unfair

competition is identical to the test for federal infringement and unfair competition."). To prove these violations, "a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc.*, 237 F.3d at 210.

The first two elements are satisfied by Plaintiff's certificate of registration for the "ARCHforensic" mark. *See CrossFit, Inc. v. 2XR Fit Sys., LLC*, No. CIV. 2:13-1108 KM, 2014 WL 972158, at *3 (D.N.J. Mar. 11, 2014) ("A 'certificate of registration issued by the [USPTO] constitutes prima facie evidence of the validity and ownership of a disputed mark' and is therefore sufficient to establish the first and second elements of trademark infringement and false designation claims." (citation omitted)); ECF No. 26-2. Regarding the third element, the Third Circuit analyzes ten non-exhaustive factors set forth in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983). However, "[t]his Court need not conduct a detailed analysis under each *Lapp* factor because Plaintiff's Complaint, which must be perceived as true at this juncture, establishes a likelihood of confusion." *InnovAsian Cuisine Enterprises, Inc. v. Innovasian Taco*, No. CV1916296, 2020 WL 3969917, at *4 (D.N.J. July 14, 2020). As such, the Court discusses the factors that are discernible from the limited record before it: factors 1, 2, 6, 8, 9, and 10.

The first factor, the degree of similarity between the owner's mark and the alleged infringing mark, is "[t]he single most important factor in determining likelihood of confusion[.]" *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 183 (3d Cir. 2010) (citation and quotations omitted). Here, the two marks at issue are similar because they are comprised of the same two words: "arch" and "forensic." The only difference is that Defendants' mark puts a space between the two words and adds an "s" to "forensic." Regarding the second factor, Plaintiff's mark is registered, indicating its strength. *See CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F. Supp. 2d 400, 407 (D.N.J. 2010). Regarding the sixth factor, Plaintiff has asserted several instances where Defendants' use of its "Arch Forensics" mark has caused actual confusion among Defendants' customers and the Office of the New Jersey Attorney General. Compl. ¶¶ 40-44. "Evidence of actual confusion is . . . highly probative of a likelihood of confusion." *Sabinsa Corp.*, 609 F.3d at 187. Lastly, Plaintiff has asserted that its services overlap with Defendants' services, which implicate factors 8, 9, and 10. *See CSC Holdings, LLC*, 731 F. Supp. 2d at 407. Considering these factors, the Court finds that the third element—whether the Defendants' use of the mark to identify goods or services causes a likelihood of confusion—has been met.

Thus, Plaintiff has sufficiently alleged valid causes of action for federal trademark infringement under 15 U.S.C. § 1114 (count 1), federal false designation of origin and unfair competition under 15 U.S.C. § 1125(a)(1)(A) (count 2), and common law trademark infringement and unfair competition (count 5).

2. *Count 3: Cybersquatting in Violation of 15 U.S.C. § 1125(d)*

"To make out a claim under the Anti-cybersquatting Consumer Protection Act ('ACPA') (15 U.S.C. § 1125(d)), Plaintiff must prove three elements[:] (1) Plaintiff's mark (i.e., the name of the good/service/company, etc.) is distinctive or famous, (2) Defendant's domain name (i.e., website address) is confusingly similar to Plaintiff's mark, and (3) Defendant chose the domain name with the bad faith intent to profit from its use." *Axelrod v. Heyburn*, No. CIV. NO. 09 5627, 2010 WL 1816245, at *3 (D.N.J. May 3, 2010) (citing *Shields v. Zuccarini,* 254 F.3d 476, 482 (3d Cir. 2001)).

For the first element, Court finds that Plaintiff has sufficiently alleged that its mark is distinctive or famous under the factors listed in Section 1125(c)(2). Plaintiff has continually used the ARCHforensic trademark since 2014 and has registered it on the Federal Register. Compl. ¶¶ 15-16, 18. "The longevity of [this] use suggests that [ARCHforensic] has acquired some fame in the marketplace." *Shields*, 254 F.3d at 483. Plaintiff is licensed to perform engineering and architectural services in thirteen states and holds a national certification for architecture. Compl. ¶ 10. ARCHforensic's founder, Christopher Ling, has been a lecturer and presenter at the New Jersey State Bar Construction Section and other industry organizations. Compl. ¶¶ 20, 23. Further, Mr. Ling has been recognized for his contributions to the National Council of Architectural Registration Boards in Washington, D.C. and has been interviewed by the television program *Inside Edition* about arena safety concerns. Compl. ¶¶ 22, 24. The second element is met because Defendants' domain name, www.archforensics.com, adds only one letter to the end of Plaintiff's ARCHforensic mark. *See Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1097 (N.D. Cal. 2014) (citing *Shields,* 254 F.3d at 483) (holding that "[d]omain names may be confusingly similar to a protected mark [under the ACPA] if they incorporate the mark or if they add, delete, or rearrange letters in the mark").

The Court is disadvantaged in assessing the third element, whether Defendants acted with bad faith intent, because they have not appeared in this action. However, "their noncooperation will not inoculate them against adverse inferences." *CrossFit, Inc. v. 2XR Fit Sys.*, LLC, No. CIV. 2:13-1108 KM, 2014 WL 972158, at *8 (D.N.J. Mar. 11, 2014). Section 1125(d)(1)(B)(i) lists nine-non-exhaustive factors for courts to consider when assessing bad faith intent, and the Court will discuss the factors that are applicable at this juncture. Two factors negate a finding of bad faith intent. The domain name at issue, "www.archforensics.com," is similar to the legal name of Defendant Arch Forensics, LLC (factor II). Further, Plaintiff states in its Complaint that Defendants had actual customers, which suggests that the "www.archforensics.com" domain name was likely used in connection with bona fide services (factor III). Compl. ¶¶ 41-44. However, Defendants do not have any trademark or intellectual property rights in the "www.archforensics.com" domain name (factor I). Further, Plaintiff has alleged that Defendants have continued to use the domain name despite knowing that the "www.archforensics.com" domain name would create a likelihood of confusion with Plaintiff's "ARCHforensic" trademark (factor

V). Compl. ¶¶ 31-32; *see Punch Clock, Inc. v. Smart Software Dev.*, 553 F. Supp. 2d 1353, 1358 (S.D. Fla. 2008) (holding that defendant's ongoing willful infringement of plaintiff's trademark bolstered plaintiff's allegations of defendant's bad faith intent to profit from domain name). Finally, as discussed *supra*, Plaintiff's "ARCHforensic" mark, which is incorporated in Defendants' "www.archforensics.com" domain name, is distinctive and famous under Section 1125(c)(2) (factor IX). Weighing these factors, the Court finds that Defendants have acted with bad faith intent, and that Plaintiff has sufficiently alleged a legitimate cause of action for cybersquatting.

3. *Count 4: False Advertising under 15 U.S.C. § 1125(a)(1)(B)*

"Broadly stated, the elements [of] a false advertising claim are: 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 n.7 (3d Cir. 2017).

Plaintiff alleges that by using the "Arch Forensics" mark and domain name, Defendants misrepresent the nature of their services, including the source of their services and the right to engage in commercial activities using the "Arch Forensics" mark and domain name. Compl. ¶ 69. However, Plaintiff fails to demonstrate how Defendants' use of the "Arch Forensics" mark and domain name is false or misleading about the alleged services that they provide.[2] Use of the "Arch Forensics" mark and domain name may cause confusion with Plaintiff's "ARCHforensic" mark, but it suggests nothing about the nature of the services that were actually provided by Defendants.

Separately, Plaintiff alleges that Defendants have represented that they are engineers and/or provide engineering services. Compl. ¶ 72. Plaintiff asserts that this statement is false and misleading and has caused and threatens to cause Plaintiff damage and irreparable harm. Compl. ¶ 75. However, Plaintiff fails to demonstrate how this misrepresentation, if taken as true, would harm Plaintiff. The "Arch Forensics" mark and domain name do not suggest that the Defendants are engineers, and Plaintiff has not alleged any facts showing that Defendants' use of its "Arch *Engineering*" name would cause any harm to Plaintiff.

As such, Plaintiff has failed to allege a legitimate cause of action for false advertising under 15 U.S.C. § 1125(a)(1)(B). Thus, Plaintiff's motion for default judgment on this claim will be denied without prejudice.

---

[2] Plaintiff erroneously claims in its Motion that the elements for federal false advertising are the same as a claim for federal trademark infringement. ECF No. 25 at 11. As such, Plaintiff does not assert any arguments or cite to any facts in its Motion that specifically relate to its federal false advertising claim.

### D. Propriety of Default Judgment under *Chamberlain*

The Court must now determine whether Plaintiff is entitled to default judgment on the valid causes of action demonstrated in the Complaint. "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). All three of these factors weigh in favor of granting default judgment on the validly stated claims.

First, Plaintiff will be prejudiced absent a default judgment. Because Defendants have not responded to Plaintiff's claims, Plaintiff is "left with no other means to vindicate [its] claims." *United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016). "Not entering default judgment would simply result in an interminable delay during which [Defendants] continue[] to violate Plaintiff's rights." *Strike 3 Holdings, LLC v. Vokoun*, No. 20-cv-14321, 2022 WL 310201, at *4 (D.N.J. Feb. 2, 2022). Second, a meritorious defense is one that, "if established on trial, would constitute a complete defense to the action." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). The Court cannot consider Defendants' defenses, if any exist, because the Defendants have failed to respond to this action. *See, e.g.*, *Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. Dubin Paper Co.*, No. 11-cv-7137, 2012 WL 3018062, at *4 (D.N.J. July 24, 2012). As such, "no meritorious defense presently exists with respect to deciding this motion for default judgment." *Vo*, 2016 WL 475313, at *3. Third, the Court presumes that Defendants are culpable due to their failure to respond to this action. *See, e.g.*, *Joe Hand Promotions, Inc. v. Waldron*, No. CIV. 11-849, 2013 WL 1007398, at *4 (D.N.J. Mar. 13, 2013) ("[The] Defendants' failure to respond permits the Court to draw an inference of culpability on their part.").

Because all three *Chamberlain* factors weigh against Defendants, the Court holds that Plaintiff is entitled to default judgment on its claims for federal trademark infringement under 15 U.S.C. § 1114 (count 1); federal false designation of origin and unfair competition under 15 U.S.C. § 1125(a)(1)(A) (count 2); cybersquatting under 15 U.S.C. § 1125(d) (count 3); and common law trademark infringement and unfair competition (count 5). The Court must now assess remedies.

### E. Remedies

Plaintiff requests permanent injunctive relief, statutory damages, and attorney's fees. ECF No. 25 at 18-22. In a motion for default judgment, the factual allegations of the Complaint relating to damages will not be taken as true. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

*a. Permanent Injunctive Relief*

Plaintiff seeks a permanent injunction to bar Defendants from using its "Arch Forensics" mark in commerce. ECF No. 25 at 18. Plaintiff also seeks to disable Defendants' "www.archforensics.com" domain name and have it transferred to Plaintiff. *Id.*; *see* 15 U.S.C. § 1125(d)(1)(C). In seeking a permanent injunction, Plaintiff must demonstrate that: (1) it has suffered an irreparable injury; (2) the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) the public interest would not be disserved by a permanent injunction. *See Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 689 (D.N.J. 2015) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

Plaintiff has met its burden. First, the Third Circuit recognizes that "trademark infringement amounts to irreparable injury as a matter of law." *Am. Bridal & Prom Indus. Ass'n, Inc. v. Jollyprom.com*, No. CV 17-2454, 2018 WL 1226106, at *4 (D.N.J. Mar. 9, 2018) (quoting *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 237 (3d Cir. 2003)). Plaintiff would suffer irreparable injury if Defendants were permitted to continue using the "Arch Forensics" mark and domain name because, as discussed *supra*, it would continue to cause confusion between the two entities, causing Plaintiff loss of control of reputation, loss of trade, and loss of good will. *See Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) ("This court has held that once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury."). "Second, monetary compensation alone cannot necessarily cure injury to a company's reputation and goodwill." *Am. Bridal & Prom Indus. Ass'n, Inc.*, No. CV 17-2454, 2018 WL 1226106, at *4. While damages may compensate a plaintiff for injury already incurred, it will not protect against future infringement. *Id.* Further, "[w]here [d]efaulting Defendants have not yet participated in or recognized [the] lawsuit, this factor marshals in favor of injunction to ensure the future protection of Plaintiff['s] mark[] and brand reputation." *Id.* Third, the balance of hardships tips in Plaintiff's direction because "the only hardship imposed upon the Defendant [by an injunction] is that they obey the law." *Malibu Media, LLC v. Toshi Yamada*, No. CV171183, 2019 WL 1586813, at *3 (D.N.J. Apr. 12, 2019) (citation, alteration, and quotations omitted). Fourth, the public interest strongly favors protecting a trademark holder's property interests from erosion and avoiding public confusion. *Am. Bridal & Prom Indus. Ass'n, Inc.*, No. CV 17-2454, 2018 WL 1226106, at *5 (citing *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir. 1984)). Accordingly, Plaintiff is entitled to the injunctive relief it has requested.

*b. Statutory Damages*

Plaintiff seeks statutory damages solely under the Anti-cybersquatting Consumer Protection Act ("ACPA"). Under the ACPA, a "plaintiff may elect . . . to recover, instead

of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Defendants' continued use of the "Arch Forensics" mark and domain name, despite being on notice that it is confusingly similar to Plaintiff's "ARCHforensic" mark, is wrongful. However, their behavior "falls short of actual counterfeiting." *CrossFit, Inc. v. 2XR Fit Sys., LLC*, No. CIV. 2:13-1108 KM, 2014 WL 972158, at *12 (D.N.J. Mar. 11, 2014). Further, because the domain name does consist of the legal name of Defendant Arch Forensics, LLC and was likely used in connection with the bona fide offering of services, the Court declines to award the statutory maximum award. The Court awards Plaintiff $35,000.00 in statutory damages.

c. *Attorney's Fees*

Plaintiff also seeks recovery of attorney's fees and costs under § 1117(a). The statute provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. "[E]xceptional cases include those where the Court has made a finding of willfulness." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 539 (D.N.J. 2008). Here, because Defendants "wholly failed to respond to Plaintiff's Complaint and Motion, the Court can infer that the trademark infringement was indeed willful." *InnovAsian Cuisine Enterprises, Inc. v. Innovasian Taco*, No. CV1916296, 2020 WL 3969917, at *7 (D.N.J. July 14, 2020) (citation and quotations omitted). Further, Defendants' continued use of the "Arch Forensics" mark and domain after receiving notice that it was similarly confusing to Plaintiff's mark is "additional evidence of willful infringement." *Id.* Thus, the Court finds this case "exceptional."

"The party seeking attorneys' fees has the burden of proving that the requested fees are reasonable." *Jackson Hewitt Inc. v. Nat'l Tax Network, LLC*, No. CV 10-5912 (ES), 2015 WL 5770089, at *4 (D.N.J. Sept. 29, 2015) (citation omitted). "Redundant, excessive, or unnecessary fees are not reasonable." *Id.* Plaintiff submitted its attorney billing invoices under seal to substantiate its request for $67,598.20 in attorney fees and costs incurred in this action from January 31, 2021 through May 24, 2022.[3] ECF No. 26 ¶ 4. The invoices reflect over 185 hours of legal services performed by Plaintiff's counsel mostly relating to the drafting of the Complaint and the effectuation of service. ECF No. 27. However, Plaintiff submitted invoices in the amount of $2,283.00 for work done outside of this instant case—particularly, work done in response to the misdirected letter from the New Jersey Attorney General's office and work relating solely to the TTAB proceedings. These fees will be subtracted from the total amount invoiced, for a total of $65,315.20.

[3] Plaintiff's counsel stated that it would submit additional invoices to the Court for services rendered after May 24, 2022, but the Court has not received them. ECF No. 26 ¶¶ 5-6. As such, those fees will not be awarded.

Further, the Court recognizes that the Complaint in this case was not boilerplate, and that additional effort was required to locate Defendants in order to properly assert jurisdiction and effectuate service. However, counsel spent approximately 115 hours working on the Complaint alone, including spending roughly 70 hours working on venue and corporate research issues. Additionally, most of these hours were billed by Celeste M. Butera, an experienced patent attorney,[4] at a rate of $390 an hour. While Ms. Butera's rate may be reasonable for her experience, no explanation was given as to why a more junior attorney could not complete most of this work. Accordingly, the Court finds that the fees requested by Plaintiff are redundant and excessive, and thus not reasonable. *See In re McZeal*, No. 14-15947, 2019 WL 4741674, at *4 (Bankr. N.D. Ohio Sept. 27, 2019) (finding it unreasonable for an experienced attorney to spend 12.4 hours researching and drafting a complaint). The Court finds that a one-half reduction in Ms. Butera's fees is reasonable. Notwithstanding the work done outside of this case that was subtracted *supra*, Ms. Butera billed approximately 134 hours to this matter. A one-half reduction would result in a reduction of 67 hours at $390 an hour, for a total reduction of $26,130.00. Accordingly, the Court awards $39,185.20 in attorney fees and costs.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for default judgment is **GRANTED in part and DENIED in part**. An appropriate order follows.

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 28, 2023**

[4] The Court takes judicial notice of Ms. Butera's online biography at www.hbiplaw.com/bio/celeste-m-butera.